No. 14-1310

In the

# UNITED STATES COURT OF APPEALS

### For the

### EIGHTH CIRCUIT

---

Terry **ELLIS,** et al.,
Appellants-Appellants,

vs.

### COMMISSIONER OF INTERNAL REVENUE
Appellee-Appellee.

---

On Appeal From The United States Tax Court
For the District of Missouri
No. 12960-11

### OPENING BRIEF OF APPELLANTS

Troy D. Renkemeyer
Renkemeyer Law Firm, LP
Corporate Woods, Bldg. 12
10975 Benson Drive, Suite 570
Overland Park, KS 66210
(913) 906-9800
(913) 906-9840 (fax)
trenkemeyer@rcwlawfirm.com

*Counsel for Appellants*

April 23, 2014

i

# SUMMARY OF THE CASE

This is an appeal from the U.S. Tax Court on its determination that a prohibited transaction occurred between Appellant and his IRA. The IRA contributed capital to CST Investments, LLC in exchange for 98% of its membership shares. CST operated a used car dealership of which Appellant was the Manager. CST paid Appellant a modest wage for its full-time management services, and rent for use of the space in which CST operated. As no facts are in dispute, the parties jointly submitted the case to the Trial Court under U.S. Tax Court Rule 122 requesting a summary judgment fashion resolution. The Trial Court found that while the investment by the IRA is not a prohibited transaction, the subsequent payment of wages and rent did constitute a prohibited transaction.

The issue turns on whether the assets of CST used to pay the wages were plan assets of the IRA, rather than the membership shares of CST being the plan asset. The Trial Court determined in a conclusory fashion that because CST was primarily owned and funded by the IRA, that it was "*substantially the same*" as the IRA. Appellant argues that 29 CFR § 2510.3-101(a), known as the Plan Asset Regulation, provides an objective bright-line rule as to when the underlying assets of an IRA-owned entity are deemed plan assets. The Trial Court failed to consider or even address the Plan Asset Regulation. The sole purpose of the regulation is to provide an objective rule for taxpayer guidance on this exact issue.

Appellate Case: 14-1310    Page: 2    Date Filed: 05/01/2014 Entry ID: 4149712

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………...iii

JURISDICTIONAL STATEMENT……………………………………………..1

STATEMENT OF ISSUES PRESENTED FOR REVIEW………………………..1

SUMMARY OF THECASE……………………………………………………..2

STATEMENT OF FACTS…………………………………………………………3

STANDARD OF REVIEW……………………………………………………...6

SUMMARY OF ARGUMENT…………………………………………………7

I.      IRC § 4975: Prohibited Transactions Generally…………………………....9

II.     The Plan Asset Regulation……………………………………………13

III.    IRA-Owned Entities are Common………………………………………16

IV.     Payment of Wages and Rent by CST to Appellant………………………...18

V.      Similarities of Swanson, Hellweg, and IRS Advice Memo's……………...19

CONCLUSION …………………………………………………………..27

Appellate Case: 14-1310    Page: 3    Date Filed: 05/01/2014 Entry ID: 4149712

# TABLE OF AUTHORITIES

**CASES**

*Cybor Corp. v. FAS Tech., Inc.,* 138 F.3d 1448, 1456 (Fed.Cir.1996)……………6

*Hellwig v. Commissioner, T.C.,* Memo. 2011-58 (2001)…..1, 17, 19,21,22,23,24,27

*Lieb v. Commission*, 88 T.C. 1474 (1987)………………………………………26

*Markman v. Westview Instruments, Inc.* 517 U.S. 370, 384 (1996)………………6

*N. Star Steel Co. v. Mid. Am. Energy Holdings Co.,*184 F.3d 732, 738 (8th Cir. 1999)……………………………………………………………………………..6

*Raynor,* 617 F.3d 1065, 1069 (8th Cir.2010)………………………………………6

*Swanson v. Commissioner,* 106 T.C. 76, 93(1996)……………1,17,19,20,21,23, 27

**STATUTES**

IRC §408(e)(3)………………………………………………………………22

IRC §408(e)(4)………………………………………………………………22

IRC §408(e)(5)………………………………………………………………22

IRC §4975…………………………………………………………1,5,7,8,9,11,13

IRC §4975(c)……………………………………………8,9,12,13,18,19,22,23

IRC §4975(c)(1)………………………………………………………………..11

IRC §§4975(c)(1)(A), (B), or (C)………………………………………9,17,22

IRC §§4975(c)(1)(A) through (F)………………………………………...17

IRC §4975(c)(1)(D)…………………………………………………………17,22

IRC §4975(c)(1)(E)…………………………………………………...17,21,22

IRC §§4975(d)………………………………………………………………… 24

Appellate Case: 14-1310    Page: 4    Date Filed: 05/01/2014 Entry ID: 4149712

IRC §4975(d)(2)……………………………………………………………..1,24,26

IRC §§4975(d)(2) and (10)…………………………………………………..24

IRC §4975(d)(2) and (10)…………………………………………………....24,26

IRC §4975(e)…………………………………………………………………...11

IRC §4975(e)(1)…………………………………………………………...11

IRC §4975(e)(2)………………………………………………………………...12

**REGULATIONS**

28 U.S.C. §1292 (a)(1)……………………………………………………….1

29 C.F.R. §2510.3-101………………………………………1,2,7,8,13,16,18,23

29 CFR §2510.3-101(a)……………………………………………………….2

29 CFR §2510.3-101(a)(2)……………………………………………………....8

29 CFR §2550.408c-2…………………………………………………..........26

**OTHER AUTHORITIES**

IRS Field Service Advice 200128011………………………………………17,27

DOL Opinion Letter 83-45A……………………………………………...26

Investment Act of 1040………………………………………………...14

Tax Court Rule 122…………………………………………………....2,6

Appellate Case: 14-1310    Page: 5    Date Filed: 05/01/2014 Entry ID: 4149712

## JURISDICTIONAL STATEMENT

This appeal is from the decision on October 29, 2013 of the United States Tax Court order of deficiency in federal income tax due and penalty on such deficiency under the Internal Revenue Code for the taxable years 2005 and 2006. The United States Tax Court had subject matter jurisdiction under 28 U.S.C. § 1331 as Appellants allege Federal law claims. (Pet. App.531 & Add. 1-28) This Court has appellate jurisdiction under 28 U.S.C. § 1292 (a)(1). Petitioner filed a timely Notice of Appeal on January 28, 2014 of the October 29, 2013 final decision of the United States Tax Court. (Pet. App.533)

## STATEMENT OF ISSUES

1. Whether the Trial Court erred in finding that a prohibited transaction occurred under IRC Section 4975 as a result of the payment of wages and rent by CST to Appellant, in that the Court failed to consider the application of 29 C.F.R. §2510.3-101, otherwise known as the "Plan Asset Regulation" in making the determining that the assets of CST were "plan assets."

*Swanson v. Commissioner,* 106 T.C. 76, 93(1996)

*Hellwig v. Commissioner, T.C.,* Memo. 2011-58 (2001)

2. Whether the Trial Court erred in finding that a prohibited transaction occurred under IRC Section 4975 as a result of the payment of compensation by CST to Appellant, in that the Court failed to consider the application of the exception provided by IRC Sections 4975(d)(2) and (10).

There are no Apposite Cases on this issue.

1

## STATEMENT OF THE CASE

A. Procedural History and Case Issues

This is an appeal from the U.S. Tax Court on its determination that a prohibited transaction occurred between Appellant and his IRA. (Pet. App. 532-533) As no facts are in dispute, the parties jointly submitted the case to the Trial Court under U.S. Tax Court Rule 122 requesting a summary judgment fashion resolution. (Pet. App. 350-352, 506) The Court decided the matter solely based on the briefs of the parties pursuant to Rule 122. (Pet. App. 506) No oral argument was made.

Appellant's IRA invested in CST Investments, LLC of which it became the owner of 98% of its shares. (Pet. App. 507) The limited liability company owned and operated a used car lot. (Pet. App. 508) Appellant worked full-time for the car lot in exchange for modest wages. (Pet. App. 509) The Trial Court found that while the investment by the IRA is not a prohibited transaction, the subsequent payment of wages and rent did constitute a prohibited transaction. (Pet. App. 522, 524)

The issue turns on whether the assets of CST used to pay the wages were plan assets of the IRA, rather than the membership shares of CST being the plan asset. 29 CFR § 2510.3-101(a) The Trial Court determined that because CST was

2

primarily owned and funded by the IRA, that it was "*substantially the same*" as the IRA. (Pet. App. 524) Based on this, it disregarded CST and deemed the assets of CST to be the assets of the IRA, or "plan assets." (Pet. App. 522-526) Appellant argues that 29 CFR § 2510.3-101(a) provides an objective bright-line rule as to when the underlying assets of an IRA-owned entity are deemed plan assets.

B. <u>Statement of Facts</u>

The Appellant in this case, Terry L. Ellis accumulated a 401(k) plan after many years of service at a large pharmaceutical company, Aventis Pharmaceuticals, Inc. (Pet. App. 007-008)   In 2005 Appellant rolled over $321,345.25 from this 401(k) plan to its self-directed traditional IRA ("IRA"). (Pet. App. 007-008) Appellant immediately directed the IRA custodian to invest the money in the purchase of membership shares representing 98% of a newly formed entity, CST Investments, LLC which is a Missouri limited liability company ("CST"). (Pet. App. 009)  The IRA made the capital contribution to CST in exchange for newly issued membership shares of CST. (Pet. App. 009) The remaining 2% were owned by an unrelated person who worked full-time for CST. (Pet. App. 009)  CST was formed at that time in 2005 for the purpose of operating a used automobile sales business. (Pet. App. 005-006)  Appellant worked full-time as the Manager of CST. (Pet. App. 006)  As Manager, Appellant had decision making authority for CST. (Pet. App. 120) CST elected to be taxed as a c-

3

Appellate Case: 14-1310     Page: 8     Date Filed: 05/01/2014 Entry ID: 4149712

corporation. (Pet. App. 007 & Pet. App. 153) As such, all of the taxable income of CST was properly included in the corporate tax returns of CST. (Pet. App. 153 & Pet. App. 179-185 & Pet. App. 260-268)

CST paid Appellant a salary in years 2005 through 2008 for his role in managing the operations of CST. (Pet. App. 078)  In these years, CST also paid rent for the space used in the business to CDJ, LLC, an entity owned by Appellant and Appellants family members. ( Pet. App. 078) The sole purpose of CDJ, LLC was to own and lease this real property. (Pet. App.014)  The wages and rent were paid from CST's corporate checking account and were properly included by Appellant in his taxable income.   The payments made were in the following amounts:

| Salary | Rent |
|--------|------|
| 2005: $9,754 | $0 |
| 2006: $29,262 | $21,800 |
| 2007: $0 | $12,410 |
| 2008: $1,117 | |

After a few years, the business failed.  All of the capital contributed to CST by the IRA, along with all cash flow from operations had been either lost or paid out to Appellant as taxable salaries and rent.   (Pet. App 407) Thus, the entire investment by the IRA has either been taxed or lost. *Id.* All amounts paid to Appellant have been taxed on Appellant's individual tax returns.   (Pet. App 15-16)

4

Appellant disclosed the 401(k) rollover to its IRA on its Form 1040 for 2005, identifying it as a non-taxable rollover distribution. (Pet. App. 007)  No forms exist, or procedures are in place for an IRA or a taxpayer to disclose to the IRS what securities the IRA invests in, nor is there a requirement to make such disclosure.  As such, it was not disclosed that the securities purchased by the IRA were the membership shares of CST. (Pet. App 15-16)  Other than the existence of the alleged prohibited transaction, all required and proper tax reporting was made by all parties including Appellant, CST, and CDJ.  (Pet. App 15-16)

The IRS sent Appellant a Notice of Deficiency for years 2005 and 2006 describing a deficiency in income for each year in the amount of the rollover from Appellant's 401(k) to the IRA. (Pet. App. 017 & Pet. App. 094-109)  For 2005, the basis for this determination is that either (a) the purchase by the IRA of membership shares of CST constituted a prohibited transaction pursuant to IRC § 4975, or (b) the subsequent wages and rent paid by CST to Appellant during 2005 constituted a prohibited transaction pursuant to IRC § 4975. (Pet. App. 382)  The IRS determined that as the result of the alleged prohibited transaction the IRA lost its exemption status as an IRA. (Pet. App. 012)  The IRS determined that because it lost its exemption, the rollover from his 401(k) was a taxable distribution.  The parties agree as to the effect of a prohibited transaction.  The only issue on appeal is whether a prohibited transaction occurred. (Pet. App 57)

5

The same Notice of Deficiency described a deficiency in the income of Appellant for the year 2006 as a "whipsaw" or "conditional" tax assessment. (Pet. App. 527)    As such, the tax assessment was only to be effective in the event the Trial Court found that no tax became due in year 2005.  *Id.*  The 2006 deficiency was solely based on the prohibited transaction related to the payment of wages and rent by CST to Appellant. *Id.*    The 2006 assessment is conditional because theoretically if a paying wages and rent is a prohibited transaction then it occurred first in 2005 which results in the IRA losing its status as tax exempt and becomes taxable.  *Id.* It could not then become taxable again in 2006. *Id.* The parties stipulated that the 2006 deficiency would only exist if the Court determines that no taxes were owed from 2005.  *Id.* Thus the 2006 tax assessment is moot at this point.

## STANDARD OF REVIEW

The parties stipulated to all facts.  They filed a joint motion for a decision under Tax Court Rule 122,(Pet. App. 350) a summary judgment resolution because they agreed only matters of law were at issue.  When evaluating the U.S. Tax Court's decision, this Court reviews the U.S. Tax Court's legal conclusions *de novo. See, e.g.,* In re Raynor, 617 F.3d 1065, 1069 (8th Cir.2010) ("We review questions of law *de novo."*); N. Star Steel Co. v. Mid. Am. Energy Holdings Co*.,*

6

184 F .3d 732, 738 (8th Cir. 1999).This Court reviews claim construction, an issue of law*, de novo.* <u>Markman v. Westview Insturments, Inc</u>*.* 517 U.S. 370, 384 (1996*);* <u>Cybor Corp. v. FAS Tech., Inc.,</u> 138 F.3d 1448, 1456 (Fed.Cir.1996)(*en banc*).

## SUMMARY OF ARGUMENT

IRC Section 4975 identifies a list of transactions that constitute prohibited transactions.  Each of these transactions are between a retirement "plan" and a "disqualified person."  *Id.* They involve the payment of "plan assets" by the "plan" to a "Disqualified Person."  *Id.*  The parties agree that Appellant's IRA is a "plan" and that both Appellant and CST are Disqualified Persons because of their relationships to the plan.  (Pet. App. 519) The Trial Court found that the investment into CST was <u>not</u> a prohibited transaction.  (Pet. App. 522) This issue is not on appeal.  However, the Trial Court found that the subsequent payment of wages and rent by CST to Appellant constituted a prohibited transaction under IRC 4975. (Pet. App. 524)  The primary issue on appeal is whether the assets of CST constitute plan assets as the payment of wages and rent were paid from CST's assets.  Appellant argues that CST is not a plan and that the assets of CST are not plan assets and thus, no prohibited transaction occurred.

7

The governing regulations specifically define "plan assets" for purposes of determining whether a prohibited transaction occurred in situations such as in this case where a plan such as an IRA invests into the stock of an operating business such as CST. *See* 29 C.F.R. §2510.3-101. This regulation is known as the "Plan Asset Regulation." ***The sole purpose of the Plan Asset Regulation is to determine which situations the underlying assets of an entity owned by an IRA are considered plan assets for purposes of IRC § 4975.*** *Id.* In situations described in the Plan Asset Regulation, the stock or membership shares of the entity are plan assets, but not the underlying assets owned by such entity. *Id.*

The regulation provides an objective bright-line test as to when and if the underlying assets are plan assets. *Id*. There are three situations in which the underlying assets of a company are not considered plan assets. *Id.* One of these situations is if the IRA-owned company is an "operating company" as defined therein, then its underlying assets are plan assets. *Id.* In this case, it is undisputed that CST is an operating company. (Pet. App. 084) As such, the membership shares of CST are plan assets, but the underlying assets of CST are not plan assets. *See* 29 CFR § 2510.3-101(a)(2). Thus, because the underlying assets of CST are not plan assets of the IRA, the payment wages and rent to Appellant from CST's assets did not constitute a prohibited transaction. *See* 29 CFR § 2510.3-101; IRC § 4975(c).

Appellate Case: 14-1310     Page: 13     Date Filed: 05/01/2014 Entry ID: 4149712

Although the application of the Plan Asset Regulation was thoroughly argued by Appellant and the IRS in their briefs filed with the Trial Court, the Trial Court failed to consider or even address this regulation. (Pet. App. 524) The Trial Court erred in failing to apply the Plan Asset Regulation in its analysis of whether CST's underlying assets were plan assets. *Id.* In a conclusory fashion, the Court merely provided that because CST membership shares were the only material asset of the IRA and that the IRA owned 98% of CST, CST and the IRA were "*substantially the same*" and therefore the underlying assets were plan assets. *Id.* It failed to consider the case law and IRS rulings in which small business entities that were 100% owned by one's IRA were not disregarded as the Trial Court has done here. *Id.*

The second issue involves an exception under IRC §§ 4975(d)(2) and (10) for payments of compensation to a disqualified person for the performance of their duties with the plan. Thus, as an alternative defense to the position of the IRS, Appellant claims an exemption from IRC § 4975(c) exists for the wages and rent paid by CST.

## ARGUMENT

### ISSUE 1: Error In Finding CST Assets Are Plan Assets

1. *IRC § 4975: Prohibited Transactions Generally*

9

Section 4975 provides for an excise tax on certain transactions that it considers "prohibited transactions" involving certain retirement plans and interested third parties (i.e. "disqualified persons.") IRC Sections 4975(c)(1)(A) through (F) specifically defines prohibited transactions to include the list of transactions as follows:

4975(c) Prohibited transaction

(1) General rule
For purposes of this section, the term "prohibited transaction" means any direct or indirect—

(A) sale or exchange, or leasing, of any property between a plan and a disqualified person;

(B) lending of money or other extension of credit between a plan and a disqualified person;

(C) furnishing of goods, services, or facilities between a plan and a disqualified person;

(D) transfer to, or use by or for the benefit of, a disqualified person of the income or assets of a plan;

(E) act by a disqualified person who is a fiduciary whereby he deals with the income or assets of a plan in his own interests or for his own account; or

(F) receipt of any consideration for his own personal account by any disqualified person

10

who is a fiduciary from any party dealing with the plan in connection with a transaction involving the income or assets of the plan.

Thus, the universe of prohibited transactions must fall within this list of transactions set forth above, although the list seems all encompassing for any transactions that could possibly occur between a plan and a disqualified person. *See* IRC § 4975(c)(1). The plain language of each type of transaction identified in IRC § 4975(c)(1) involves either a transaction between a plan and a disqualified person, or the use of plan assets for the benefit of a disqualified person. Either the plan itself or the plan assets must be involved or used in the transaction to be a prohibited transaction. *Id.* This is apparent from the plain meaning of the statute.

The term "plan" as used by IRC § 4975 is defined in IRC § 4975(e)(1) as follows:

4975(e) Definitions

(1) Plan
For purposes of this section, the term "plan" means—

(A) a trust described in section 401 (a) which forms a part of a plan, or a plan described in section 403 (a), which trust or plan is exempt from tax under section 501 (a),

(B) an individual retirement account described in section 408 (a),

11

(C) an individual retirement annuity described in section 408 (b),

(D) an Archer MSA described in section 220 (d),

(E) a health savings account described in section 223 (d),

(F) a Coverdell education savings account described in section 530, or

(G) a trust, plan, account, or annuity which, at any time, has been determined by the Secretary to be described in any preceding subparagraph of this paragraph.

The parties agree that the IRA is a plan. (Pet. App. 517) The plain language of this definition does not include persons such as Appellant or CST as a plan. *See* IRC § 4975(c).

The term "disqualified person" as defined by IRC § 4975(e)(2) includes fiduciaries of the IRA. Due to Appellant being the owner of the IRA, he is a fiduciary and therefore a disqualified person. *Id.* In addition, this definition includes CST as a disqualified person because the IRA owns 98% of the stock of CST. *Id.* The parties agree that both the Appellant and CST are disqualified persons. Further, no dispute exists that the plan itself or the plan assets must be involved or used in the transaction to be a prohibited transaction. *See* IRC § 4975(c). This is apparent from the plain meaning of the statute. *See* IRC § 4975(c). Additionally, the parties do not dispute the effect of a prohibited

12

transaction. (Pet. App. 527)    IRC § 408(e)(2) provides that the penalty for an IRA engaging in a prohibited transaction is the IRA being deemed disqualified on the 1st day of the tax year in which the prohibited transaction occurs, resulting the fair market value of the IRA assets being deemed distributed to the IRA owner.

The only term at issue on this appeal is what constitutes plan assets. The only definition of plan assets is found in the Plan Asset Regulation. 29 C.F.R. § 2510.3-101.  The Plan Assets Regulation is addressed in the next section below. The only point at issue on appeal is whether CST's assets are plan assets.  If they are plan assets then payment of the wages and rent from such assets would constitute prohibited transactions. *See* IRC § 4975(c).    However, if they are not plan assets, then no prohibited transactions occurred. *Id.*

## 2. *The Plan Asset Regulation*

The Plan Asset Regulation provides that in certain situations the equity interest in the entity itself represented by the membership shares or stock certificate is the plan asset rather than the underlying assets of the entity.   29 C.F.R. § 2510.3-101.  The Plan Asset Regulation has only one purpose: to provide an objective bright-line test as to when the underlying assets of an entity owned by a plan are deemed plan assets, rather than just the shares of stock of the entity. *Id.*

The Plan Asset Regulation provides:

13

29 C.F.R. § 2510.3-101 Definition of plan assets—plan investments.

(a) In general.

(1) This section describes what constitute assets of a plan with respect to a plan's investment in another entity for purposes of subtitle A, and parts 1 and 4 of subtitle B, of title I of the Act and section 4975 of the Internal Revenue Code. Paragraph (a)(2) of this section contains a general rule relating to plan investments….

(2) Generally, when a plan invests in another entity, the plan's assets include its investment, but do not, solely by reason of such investment, include any of the underlying assets of the entity. However, in the case of a plan's investment in an equity interest of an entity that is neither a publicly-offered security nor a security issued by an investment company registered under the Investment Company Act of 1940 its assets include both the equity interest and an undivided interest in each of the underlying assets of the entity, unless it is established that—

(i) The entity is an operating company, or

(ii) Equity participation in the entity by benefit plan investors is not significant….

(b) Equity interests and publicly-offered securities. (1) The term equity interest means any interest in an entity other than an instrument that is treated as indebtedness under applicable local law and which has no substantial equity features. A profits interest in a partnership, an undivided ownership interest in property and a beneficial interest in a trust are equity interests.

Under the Plan Asset Regulation, the underlying assets of an entity owned by an IRA are plan assets unless the entity is either (a) a public company, (b) a

14

company governed by the Investment Act of 1040, (c) an "operating company" or (d) the investment in the entity constitutes an insignificant equity investment. *Id.*

For example, an IRA investing in the stock of Walmart while the IRA owner is employed at Walmart is not a prohibited transaction because the Plan Asset Regulation provides that the underlying assets of a *public company* such as Walmart are not plan assets of the IRA. *Id.* Thus, the stock of Walmart owned by an IRA is a plan asset but the assets owned by Walmart are not plan assets and can be used to pay wages to the IRA owner. *Id.* Due to this rule, one's IRA can own Walmart stock and be employed by Walmart at the same time without a prohibited transaction occurring. *Id.*

In this case, CST is an "operating company" per the definition contained in the Plan Asset Regulation. *Id.* An "operating company" is defined by the Plan Asset Regulation as set forth below to include all entities that operate a trade or business:

> 29 C.F.R. § 2510.3-101 Definition of "plan assets"—plan investments.
>
> (c) Operating company. (1) An "operating company" is an entity that is primarily engaged, directly or through a majority owned subsidiary or subsidiaries, in the production or sale of a product or service other than the investment of capital. The term "operating company" includes an entity which is not described in the preceding sentence, but which is a "venture capital operating

Appellate Case: 14-1310     Page: 20     Date Filed: 05/01/2014 Entry ID: 4149712

company" described in paragraph (d) or a "real estate operating company" described in paragraph (e).

CST operated a used automobile dealership. (Pet. App. 508) It was open at a minimum 40 hours per week. *Id.* At no time has the Trial Court or the IRS taken the position that CST did not operate a trade or business on a regular basis. (Pet. App. 360-404) In fact the position taken by the IRS in its examiner's audit report which was used to generate the Notice of Deficiency was that CST <u>was</u> an "operating company" pursuant to the Plan Asset Regulation. (Pet. App. 084, 098) The examiner's report provides:

> However, CST is considered an "operating company" per 29 C.F.R. § 2510.3-101(c)(1) in that substantially all of its income was derived from the sale of provision of goods or services. Therefore, the IRA's plan assets include its investment in CST but do not necessarily include the underlying assets of CST….

*Id.* As CST is an "operating company" the underlying assets of CST are not plan assets for purposes of the prohibited transaction rules. *Id.*

The Trial Court failed to address the Plan Asset Regulation even though the primary issues argued in the briefs of Appellant and the IRS relate to the Plan Asset Regulation. (Pet. App. 524) The Trial Court failed to provide any basis for not applying the Plan Asset Regulation. *Id.* It simply ignored it. *Id.* The sole purpose of the Plan Asset Regulation is to govern the exact situation at issue in this

16

case – whether the underlying assets of an IRA-owned small business are plan assets for purposes of determining if a prohibited transaction occurred. 29 C.F.R. § 2510.3-101

3.    *IRA-Owned Entities are Common*

It has become somewhat common for plans such as IRAs to invest in small private operating businesses and real estate rental properties. The issue of whether such an investment by an IRA into the shares of an entity constitutes a prohibited transaction has been settled multiple times.  See Swanson v. Commissioner, 106 T.C. 76, 93(1996); Hellweg v. Commissioner, T.C. Memo. 2011-58 (2001); *See also* IRS Field Service Advice 200128011.   In Swanson, Mr. Swanson's IRA purchased 100% of the shares of stock of a newly formed corporation of which he was the President and Director.  Then, in 2001 the IRS issued the Field Service Advice 200128011 2001.  In this advice memorandum the IRS acquiesced in the position taken by Swanson that the purchase of the majority of shares of a *closely held entity* did not constitute a prohibited transaction.  It provided that:

> In light of Swanson, we conclude that a prohibited transaction did not occur under section 4975(c)(1)(A) in the original issuance of the stock of FSC A to the IRAs in this case.   Similarly, we conclude that payment of dividends by [the IRA-owned entity] to IRAs in the case is not a prohibited transaction under section 4975(c)(1)(D).   We further conclude, considering

Appellate Case: 14-1310     Page: 22     Date Filed: 05/01/2014 Entry ID: 4149712

> Swanson, that we should not maintain that the ownership
> of [the IRA-owned entity] stock by the IRAs, together
> with the payment of dividends by [the IRA-owned entity]
> to the IRAs, constitutes a prohibited transaction under
> section 4975(c)(1)(E).

Then, in 2011, the U.S. Tax Court in Hellweg v. Commissioner, T.C. Memo. 2011-58 (2001) cited Swanson to again substantiate the position that neither the purchase by an IRA of the stock of an entity, nor the later payment of dividends from the entity to the IRA constituted prohibited transactions. The Court in the case at hand also found that the investment by Appellant's IRA into CST did not constitute a prohibited transaction. (Pet. App. 522) This issue is not on appeal.

### 4. *Payment of Wages and Rent are Not Prohibited Transactions.*

As noted above, Appellant concedes that both Appellant and CST are disqualified persons. Appellant also concedes that typically a transaction involving an IRA and the IRA owner such as the payment of wages and rent constitutes a prohibited transaction. However, Appellant argues that the payment of wages and rent from CST to Appellant is not a prohibited transaction because neither CST nor Appellant is a plan, and the assets used to pay the wages and rent were not plan assets as set forth by the Plan Asset Regulation. *See* IRC § 4975(c). The Court found that the IRA and CST were "*substantially the same entity*" because CST was the only material asset of the IRA and its funding came from the IRA. (Pet. App.

18

524)   The Court reasoned that because they were "*substantially the same*" CST was the plan and its assets were plan assets.   *Id.*   The entity was simply disregarded. Id. The sole purpose of the Plan Asset Regulation is to apply a bright-line test in determining if the subsidiary entity is considered "*substantially the same*" as the IRA and thus, its assets deemed plan assets.   29 C.F.R. § 2510.3-101   This is the sole purpose of the Plan Asset Regulation - to provide a degree of objectivity in determining when the subsidiary entity is to be considered "*substantially the same entity*" and when not.  *Id*. The Trial Court simply ignored the Plan Asset Regulation altogether. (Pet. App. 524)

5. *Similarities of Swanson, Hellweg, and IRS Advice Memorandums*

In <u>Swanson</u>, James Swanson created a new IRA to invest in the stock of a newly formed entity, Swanson's Worldwide, Inc. ("Worldwide.")  Worldwide was a domestic international sales corporation, referred to as a "DISC"[1].   The IRA became the 100% shareholder of the entity at that time.  It was the only asset of the IRA.  Further, Mr. Swanson was the President and Director of Worldwide. Thus, his newly created IRA was the sole owner of the newly formed Worldwide and he was the single person in charge of the decisions and management of Worldwide. Mr. Swanson then caused another entity that he owned to pay commissions to

---

[1] The fact that the entity was a DISC has no bearing on the issues of prohibited transactions.  It merely refers to the entity's ability to obtain tax benefits from international sales.

19

Worldwide.  Payment of these commissions would have been a prohibited transaction if Worldwide were deemed "*substantially the same*" as the IRA. *See* IRC § 4975(c).   In the case at hand, the Trial Court found that ***solely*** because CST was the only material asset of the IRA (just as Worldwide was in <u>Swanson</u>), and because the IRA was the sole source of funding of CST (just as only the IRA funded Worldwide in <u>Swanson</u>), CST and the IRA were "*substantially the same*." (Pet. App. 524)   In <u>Swanson</u>, the Commissioner ultimately acquiesced in the position that a prohibited transaction did not occur. <u>Swanson v. Commissioner,</u> 106 T.C. 76, 93(1996).   However the Trial Court awarded Mr. Swanson attorneys' fees related to his defense of the issues because the IRS failed to show even a reasonable basis for its original claim that a prohibited transaction occurred. *Id.*

The facts are virtually identical to the <u>Swanson</u> facts.  In both cases, the IRAs were new and formed for the sole purpose of carrying out the investment at issue.  Both IRAs invested at the direction of the taxpayer into the stock of the newly formed subsidiary.  In <u>Swanson</u>, the IRA owned 100% of the entity's stock, whereas in the case at hand, the IRA owned 98% of the entity.  In both cases the IRA owner was formally designated as the person in charge of all decision making for the entity, as Mr. Swanson was president and director of Worldwide and Appellant was Manager of CST.  Yet, the Court in the case at hand concluded CST was "*substantially the same*" as the IRA and therefore deemed a prohibited

20

transaction to occur, while it was determined in in the <u>Swanson</u> case that a prohibited transaction did not occur.  (Pet. App. 521) The only reason provided by the Trial Court in concluding they were "substantially the same" and thus the CST assets were plan assets was that (a) CST was the only material asset of the IRA and (b) CST was solely funded by the IRA. Id. These same two factors exist in <u>Swanson</u>.

In 2001, the Court in <u>Hellweg v. Commissioner</u>, T.C. Memo. 2011-58 (2001) relied upon <u>Swanson</u> in determining the IRA and the entity owned by the IRA were separate and distinct.  Like the facts in <u>Swanson</u>, <u>Hellweg</u> involved a newly created entity referred to in that case as "ADF" which was owned solely by the IRA of the taxpayer.  The entity was also a DISC.  The taxpayer was again the decision maker of ADF.  Another entity owned by the taxpayer paid commissions to ADF.  The issue in <u>Hellweg</u> was simply whether the payment of dividends from ADF to the IRA constituted an excess contribution to the IRA.  Had ADF been disregarded as the Trial Court has disregarded CST in the case at hand, the payment of commissions to it would have been deemed excess contributions to the IRA.  *See* IRC § 408.  Like the <u>Swanson</u> Court, the Court in <u>Hellweg</u> respected ADF as separate and distinct entity from the IRA.  It held that no excess contribution occurred.  <u>Hellweg</u>, T.C. Memo. 2011-58. The Court in <u>Hellweg</u> cited <u>Swanson</u> in providing:

21

We also held [in <u>Swanson</u>] that the DISC's payment of dividends to the IRA was not a prohibited transaction under section 4975(c)(1)(E) because "***there was no such direct or indirect dealing with the income or assets of a plan, as the dividends paid by Worldwide [to <u>Swanson</u>'s IRA] did not become income of [<u>Swanson</u>'s] IRA until unqualifiedly made subject to the demand of [<u>Swanson</u>'s] IRA***." Id. at 89....

Similarly, the acquisitions of ADF International stock by petitioners' Roth IRAs were also not prohibited transactions under section 4975(c)(1)(A), (B), or (C) because ADF International was not a disqualified person at the time of the stock acquisitions. The C corporations' payment of dividends to the Roth IRAs was not a prohibited transaction under section 4975(c)(1)(D), (E), or (F) because the dividends were not income of the Roth IRAs until they were received by the Roth IRAs.

The Transaction is also not prohibited under section 408(e)(3) because that provision deals with borrowing under or by use of an individual retirement annuity. Section 408(e)(4) is also inapplicable because no petitioner has pledged any portion of a Roth IRA as security for a loan. Section 408(e)(5) is not relevant because no part of any Roth IRA assets has been used to purchase an endowment contract. Section 408(m) does not apply because no Roth IRA invested in a collectible.

Contrary to respondent's contention, the Transaction is not a type of investment that Congress has expressly forbidden. To add it to that list of statutorily prohibited transactions would amount to judicial legislation.

<u>Hellweg</u> at 25-26.

Clearly, the Court in <u>Hellweg</u> distinguished the IRA from the IRA-owned entity for purposes of prohibited transactions. Had it not, each of the subsections

22

of IRC 4975 that it addressed would have resulted in a prohibited transaction. *See* IRC § 4975(c). In fact, the <u>Hellweg</u> Court also provided that these types of transactions are not what Congress intended to be prohibited transactions. *See* <u>Hellweg</u>, T.C. Memo. 2011-58. It provided that to add transactions between an IRA-owned entity and a Disqualified Person "*to the list*" would constitute judicial legislation. *Id.* This is exactly what the Trial Court did in the case at hand. It ignored the Plan Asset Regulation and added transactions between IRA-owned entities and Disqualified Persons to the list of prohibited transaction enumerated in the statute.

As set forth above, these cases provide that because the income used to pay the dividend by the entity in which the IRA invested were not a plan asset of the IRA until the IRA received the dividend, the income could be used in a transaction that would otherwise be a prohibited transaction. *See* <u>Swanson,</u> 106 T.C. 76, 93; <u>Hellweg</u>, T.C. Memo. 2011-58. This simply reiterates the notion set forth in the Plan Asset Regulation that the assets of CST were not plan assets and therefore were able to be used to pay wages and rent to a disqualified person. *See* 29 CFR § 2510.3-101; IRC § 4975(c). Both <u>Swanson</u> and <u>Hellweg</u> reemphasize the rule contained in the Plan Asset Regulation ***that the use of the underlying assets of an entity in which an IRA owns for activities that would otherwise constitute a prohibited transaction if used directly by the IRA, do not constitute a prohibited***

23

*transaction*. *See* Swanson, 106 T.C. 76, 93; Hellweg, T.C. Memo. 2011-58.

Hellweg cited Swanson in providing "*there was no such direct or indirect dealing with the income or assets of a plan, as the dividends paid by Worldwide [to Swanson's IRA] did not become income of [Swanson's] IRA" Id.* Clearly, the Hellweg Court determined the assets of the IRA-owned entity were not plan assets or else this could not have been the holding. *Id.*

### ISSUE 2: Statutory Exemptions from Prohibited Transactions

Section 4975(d) enumerates 23 exemptions from the application of the application of the prohibited transaction rules. *See* IRC §§ 4975(d). Specifically, IRC §§ 4975(d)(2) and (10) exempt the payment of fair and reasonable amounts for services, rent, etc. by a plan to a disqualified person, as provided below:

> 4975(d) Exemptions
> Except as provided in subsection (f)(6), the prohibitions provided in subsection (c) shall not apply to—
>
>> (2) any contract, or reasonable arrangement, made with a disqualified person for office space, or legal, accounting, or other services necessary for the establishment or operation of the plan, if no more than reasonable compensation is paid therefor;
>>
>> (10) receipt by a disqualified person of any reasonable compensation for services rendered, or for the reimbursement of expenses properly and

24

> actually incurred, in the performance of his duties
> with the plan, but no person so serving who
> already receives full-time pay from an employer or
> an association of employers, whose employees are
> participants in the plan or from an employee
> organization whose members are participants in
> such plan shall receive compensation from such
> fund, except for reimbursement of expenses
> properly and actually incurred;

Thus, *in the event* the Court determines that CST's assets are plan assets the payment of *reasonable* wages and rent to Appellant for space and to manage such plan assets do not constitute a prohibited transaction due to the exemptions set forth above. *Id.*

The IRS has never taken the position that the amount of wages and rent were unreasonable. (Pet. App. 078)  generally Respondent Brief  The services provided by Appellant directly relate to managing the day to day operation of the car sales business. (Pet. App .078) If the car sales business is deemed a plan asset, then an exemption under IRC §§ 4975(d)(2) and (10) from the prohibited transaction rules for such payments exists.  *See* IRC §§ 4975(d)(2) and (10).  Therefore in the event the Court determines that the assets of CST are plan assets then the payment of wages and rent for management of the plan assets would not constitute prohibited transactions under these exemptions. *Id.*

The Trial merely states again a conclusory fashion that the statute applies to "*fees and compensation paid pursuant to a plan's investment management*

25

*agreement, but not other compensation from companies in which the plan invested)."* (Pet. App. 525) First, this is the opposite view it took in providing that the IRA and CST are "*substantially the same*" and thereby disregarding CST as a separate entity. *Id.* Second, there is simply no basis for this conclusion. It merely cites *Lieb* v. Commission, 88 T.C. 1474 (1987) to support the point that the Court typically applies ERISA laws to prohibitive transactions to the extent they are "*identical*." *Id.*

Not only are IRC §§ 4975(d)(2) and (10) clear and unambiguous, DOL Regulation 2550.408c-2 provides the clear exemption for reasonable compensation to a disqualified person for service and office space. *See* 29 CFR 2550.408c-2. There is no qualification in the statute that the services be pursuant to managing a plan's investment management agreement. *Id.* This again is judicial legislation.

DOL Opinion Letter 83-45A is a clear indication that the exemptions of IRC §§ 4975(d)(2) and (10) apply to the payment by a plan for reasonable wages and rent to disqualified person. This opinion letter cites IRC §§ 4975(d)(2) and (10). It provides that the payment by a plan to a "party in interest" (the DOL term correlating with the term "disqualified person" used in the IRC) for operating costs such as repairs and maintenance of a property in which the plan has made an investment is not a prohibited transaction. *Id.* The fact pattern in that opinion letter follows the fact pattern in the case at hand. They both involve the payment

26

of a disqualified person (or "party in interest") for services related to the ongoing operation of the investment made by the plan.  If the plan assets include CST's assets as the Trial Court found, the Appellant was simply managing plan assets as set forth in the DOL regulations.  *Id.*

## CONCLUSION

The Trial Court erred by ignoring the Plan Asset Regulation in its determination of whether the assets of CST were plan assets for purposes of the prohibited transaction rules.  The very purpose of the rule is to provide guidance to taxpayers and tax professionals for them to understand when an IRA-can invest in an entity that conducts business with the IRA Account holder.  The Trial Court failed to follow the rules set forth by the Courts in <u>Swanson</u> and <u>Hellweg</u>, as well as its own Advice Memorandum that it published.  If the logic and rule applied by the Trial Court in this case were applied to either Swanson, Hellweg, or the IRS Field Advice Memorandum, the result would have been different.

Regardless, in the event it is affirmed the CST assets are plan assets by this Court, an exemption applies because the wages and rent paid to Appellant by CST were reasonable and incurred in the management of such plan assets.

Appellate Case: 14-1310    Page: 32    Date Filed: 05/01/2014 Entry ID: 4149712

Respectfully submitted,

**RENKEMEYER LAW FIRM, LP**

_____/s/ Troy Renkemeyer_____
Troy D. Renkemeyer, CPA, LLM
Tax Court No. RT0231
10975 Benson Dr., Ste., 570
Overland Park, KS 66210
(913) 906-9800
(913) 906-9840 (fax)
trenkemeyer@rcwlawfirm.com


*Counsel for Appellants*

28

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure, I hereby certify that the textual portion of the foregoing brief (exclusive of the disclosure statement, tables of contents and authorities, certificates of service and compliance, but including footnotes) contains 6469 words as determined by the word counting feature of Microsoft Word 2008.

Pursuant to Circuit Rule 28A(h), I also hereby certify that electronic files of this Brief and accompanying Addendum have been submitted to the Clerk via the Court's CM/ECF system. The files have been scanned for viruses and are virus-free.

Respectfully submitted,

/s/ Troy D. Renkemeyer

Appellate Case: 14-1310   Page: 34   Date Filed: 05/01/2014 Entry ID: 4149712