No. 14-1310

In the

# UNITED STATES COURT OF APPEALS

**For the**

**EIGHTH CIRCUIT**

---

Terry **ELLIS,** et al.,
Appellants-Appellants,

vs.

**COMMISSIONER OF INTERNAL REVENUE**
Appellee-Appellee.

---

On Appeal From The United States Tax Court
For the District of Missouri
No. 12960-11

**REPLY BRIEF OF APPELLANTS**

Troy D. Renkemeyer
Renkemeyer Law Firm, LP
Corporate Woods, Bldg. 12
10975 Benson Drive, Suite 570
Overland Park, KS 66210
(913) 906-9800
(913) 906-9840 (fax)
trenkemeyer@rcwlawfirm.com

*Counsel for Appellants*

JULY 21, 2014

i

Appellate Case: 14-1310    Page: 1    Date Filed: 07/22/2014 Entry ID: 4177726

# TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………………...iii

ARGUMENT……………………………………………………………….1

    I. Summary of Argument…………………………………………………1

    II. The Exception to Plan Asset Regulation Under 29 C.F.R. §2509.75.2(c).3

    III. Exemptions Under Section 4975 (d)(2) and (10)………………………15

    IV. Conclusion…………………………………………………………..17

CERTIFICATE OF COMPLIANCE…………………………………………...18

Appellate Case: 14-1310     Page: 2     Date Filed: 07/22/2014 Entry ID: 4177726

# TABLE OF AUTHORITIES

**CASES**

*Hellweg v. Commissioner, T.C.,* Memo. 2011-58 (2001)..................3, 12, 13, 14, 15

*Swanson v. Commissioner,* 106 T.C. 76, 93(1996)………………...3, 12, 13, 14, 15

**STATUTES**

IRC §4975(c)(1) (E)…………………………………………………….........16

IRC §§4975(d)(2) and (10)…………………………………………..2, 3, 15

**REGULATIONS**

29 C.F.R. §2510.3-101…………………………………………………….1, 7

29 C.F.R. §2509.75.2…………………………………...1, 2, 3, 4, 5, 6, 7, 8, 9, 11, 12, 15

29 C.F.R. §2509.75.2(c)…………………………………………………………3

**OTHER AUTHORITIES**

Tax Court Rule 122………………………………………………………….....10

Appellate Case: 14-1310    Page: 3    Date Filed: 07/22/2014 Entry ID: 4177726

## ARGUMENT

## I.     Summary of Argument

The Commissioner of Internal Revenue ("Commissioner") and Taxpayer appear to agree that the purpose of the Plan Asset Regulation set forth in 29 C.F.R. §2510.3-101 ("Plan Asset Regulation") is to determine when the assets owned by an IRA subsidiary entity can be used in transactions with disqualified persons without triggering a prohibited transaction.  (C.B. 32-33) They seem to agree that pursuant to the Plan Asset Regulation Taxpayer is an operating company and that as such, the assets of CST Investments, LLC ("CST") are not plan assets of the IRA of Taxpayer.  *Id.*  The parties seem to agree that the general rule under the Plan Asset Regulation is that transactions between CST and Taxpayer involving the assets of CST would not constitute a prohibited transaction because such assets are not plan assets of the IRA.  *Id*.

However, the Commissioner's primary argument is that 29 C.F.R. §2509.75.2 provides that the general rule set forth in the Plan Asset Regulation is not always applicable.  *Id*. It argues that when there is a pre-arranged plan of the fiduciary to set up the IRA and the subsidiary entity so that it can provide benefits from the subsidiary to fiduciary, the transactions between the subsidiary and the fiduciary ***may*** constitute prohibited transactions. (C.B. 34)   Thus, it argues that the general rule provided by the Plan Asset Regulation does not apply if the

1

IRA/subsidiary ownership structure was prearranged and *designed* to provide benefits to the fiduciary. *Id*. It argues that Taxpayer in this case did prearrange and design the structure in a way that it would get paid the wages and rent, and thus a prohibited transaction occurred. *Id*. Finally, the Commissioner argues that the exemptions set forth in I.R.C. 4975(d)(2) and (10) are not applicable because they do not apply to compensation for services in managing the operation of the business or rent for facilities. (C.B. 50)

Taxpayer's arguments are summarized as follows:

A. The exception to the Plan Asset Regulation set forth in 29 C.F.R. §2509.75.2 is inapplicable because:

  1. The purpose of the exception in 29 C.F.R. §2509.75.2 is to address abusive situations where the *primary purpose* of the structure was to provide benefits to the fiduciary, and nothing suggests that was the purpose in this case;

  2. The only language or example in 29 C.F.R. §2509.75.2 that could possibly relate to the facts in this case requires that a prearranged plan to pay wages and rent existed ***and*** the IRA to have the power and authority *by itself* to cause CST to pay such wages and rent. There is no evidence on the record of a prearranged plan to pay wages and rent, nor do the facts bear that such a prearranged plan

2

existed.  Further, the IRA did not have the power to cause CST to

pay wages or rent by itself.

    3.  <u>Swanson</u> and <u>Hellweg</u> Cases involved nearly identical fact patterns

as this case with respect to whether the structure was ***designed*** to

yield benefits to the fiduciary.  *Swanson v. Commissioner*, 106

T.C. 76, 93 (1996); *Hellweg v. Commissioner*, T.C., Memo. 2011-

58 (2001.)  Neither Court in these cases suggested that the assets

were not plan assets because of 29 C.F.R. §2509.75.2.

B.  The Commissioner has no basis to support its theory that the exemptions

set forth in Sections 4975(d)(2) and (10) do not apply to the payment of

reasonable wages and rent.


**II.    The Exception to Plan Asset Regulation Under 29 C.F.R. §2509.75.2(c)**

A. <u>Exception in 29 C.F.R. §2509.75.2 Applies Only to Abusive Transactions</u>

The exception set forth in 29 C.F.R. §2509.75.2(c) first acknowledges the

validity of the Plan Asset Regulation, and then provides that the general rule

provided by the Plan Asset Regulation ***may not*** apply to all situations.  ***Taxpayer***

***argues the purpose of this 29 C.F.R. §2509.75.2 is to preclude abusive situations***

***whereby the very purpose and intent of the fiduciary in creating IRA / subsidiary***

***structure is for the fiduciary to obtain benefits from the IRA while avoiding the***

3

***transaction being deemed a prohibited transaction.*** The regulation contained at 29 C.F.R. §2509.75.2 gives three examples of when the Plan Asset Regulation may not apply:

    a. *Investment Company*:  if the subsidiary entity is an "investment company" and such investment company sells securities that it owns to the fiduciary;

    b. *Insurance Company*:  if the plan invests in an insurance company and then causes that insurance company to loan the fiduciary money;

    c. *Control by Plan*: if the IRA ***by itself*** has the ability to dictate if and when the compensation or transaction in question is undertaken by the subsidiary.

The first example deals with investment companies whose vary nature and purpose is to hold securities of other companies.  *Id*. It makes sense that in this situation the sale of securities by the investment company is tantamount to the IRA itself selling the securities to the fiduciary because the investment company is merely a holding company.  This could be a hotbed for abuse if someone wanted to buy and sell marketable securities from their IRA, they could simply contribute them to an investment company which would then then resell them to the fiduciary.  The regulation contained at 29 C.F.R. §2509.75.2 prevents this abuse of the Plan Asset Regulation.

4

The second example involving an investment in insurance company followed by a loan from that insurance to the fiduciary similarly deals with a transaction that would only be undertaken if one were abusing the Plan Asset Regulation's purpose. *Id*. The regulation contained at 29 C.F.R. §2509.75.2 also prevents this abuse.

The third example contained in 29 C.F.R. §2509.75.2 involves a transaction that would otherwise be a prohibited transaction if undertaken directly by the IRA, **and** the IRA **by itself** could cause the transaction to occur. *Id*. An example of this is where an IRA invests in an entity pursuant to a contractual provision requiring a payment to be made from the entity to the fiduciary. This again involves an abusive situation whereby the **purpose** of the structure is to get this payment from the IRA ultimately to the fiduciary.

None of these three examples apply to the case at hand. While the first two examples clearly are inapplicable, the third example is also inapplicable because no such contractual provision exists. Commissioner argues the IRA had such authority under the Operating Agreement to pay the compensation to Taxpayer. (C.B. 20-21) <u>This is not true</u>. The IRA did not have the ability **by itself** to cause CST to pay wages and rent to taxpayer. The IRA acting **by itself** could not authorize the payment of compensation to Taxpayer. Section 2.3 of the Operating Agreement sets forth the requirement that 100% of the members must approve any

5

compensation paid to Taxpayer. (P.A. 123) Thus, such compensation would be required to be approved by the IRA and the other members who is an unrelated person to Taxpayer. *Id.* The IRA simply doesn't have this power. The IRA doesn't have the authority to dictate compensation even when acting in concert with Taxpayer as Manager, because the other Member's approval is still required. *Id*. Regardless, the purpose of this example is to expose an abusive situation where an IRA invests in a company ***for the purpose*** of getting benefits to the taxpayer in which the IRA has the power to cause it to happen. No such purpose existed.

Taxpayer does ***not*** argue that these examples are the only fact patterns of which 29 C.F.R. §2509.75.2 applies. They are merely examples of abusive situations in which the regulation applies. However, Taxpayer does argue that 29 C.F.R. §2509.75.2 applies only to ***abusive*** situations whereby ***the very purpose*** of the IRA / subsidiary structure is to get benefits from the IRA to the fiduciary.

One basis evidencing that the regulation only applies to abusive situations is that the language in part (c) of the regulation begins simply providing that there ***can be*** exceptions to the general rule of the Plan Asset Regulation. 29 C.F.R. §2509.75.2. It then provides "for example, if there is a prearranged plan…." Thus, the existence of a "prearranged plan" is not a requirement for the application of the regulation, but only one example of when an abusive situation could apply causing the regulation to apply. *Id*. ***The Plan Asset Regulation and 29 C.F.R.***

6

***§2509.75.2 are 100% contrary to each other, unless one reads into 29 C.F.R.***

***§2509.75.2 that it only applies to abusive situations.***

Under a literal reading of the language in 29 C.F.R. §2509.75.2, the regulation does not apply to Taxpayer. The regulation merely states that the Plan Asset Regulation ***may not*** always apply to all fact patterns, as such because the facts in this case do not fall within any of the examples set forth in the regulation, the regulation does not apply to Taxpayer. Under a logical reading of the regulation, it only applies to abusive transactions undertaken for the purpose of providing the fiduciary payments from the IRA through its subsidiary. As discussed in the next section, no such abusive situation exists in this case. Thus, 29 C.F.R. §2509.75.2 does not apply.

B. Interplay between the Plan Asset Regulation and 29 C.F.R. §2509.75.2

The purpose of the Plan Asset Regulation is to exclude from the prohibited transaction rules reasonable payments of money from an IRA-owned operating company to a fiduciary where the goal of the structure is for the IRA to invest in a small private company to make the IRA profits. 29 C.F.R. §2510.3-101. This is the only possible purpose of the Plan Asset Regulation. Its only application and result is:

7

(a) when an IRA invests in a private business that operates an active trade or business, and

(b) such private business conducts transactions with the fiduciary that would otherwise be a prohibited transaction, then

(c) such transaction is exempted from the prohibited transaction rules.

*Id.*

Here, Taxpayer falls squarely in the Plan Asset Regulation. CST received full-time services of Taxpayer in managing the car lot in exchange for a small wage. It received facilities to operate the car lot for a reasonable or small amount of rent. There is no indication or argument set forth that these amounts are not reasonable. The fact pattern in this case fits EXACTLY within the parameters of the application of the Plan Asset Regulation. **If 29 C.F.R. §2509.75.2 applies in this case to carve out this fact pattern from the Plan Asset Regulation, then what fact pattern would the Plan Asset Regulation apply or have any relevance?**

The Commissioner argues that the application of 29 C.F.R. §2509.75.2 is invoked to cause a transaction to be prohibited even though it falls within the Plan Asset Regulation when it was pre-arranged for the plan to pay the wages and rent. (C.B. 39, 42) It interprets the exception to the Plan Asset Regulation as applying

8

regardless of the existence of abuse, as long as it was pre-arranged. *Id*. There is no logic or purpose for such a meaning – it is immaterial if it was prearranged it's not abusive. What is the harm in it being pre-arranged? This is not the intent of the regulation.

Taxpayer argues that the regulation only applies to abusive situations. As such, when there is a prearranged plan to pay wages and rent, but such plan is not abusive and designed with the primary purpose to pay wages and rent to the fiduciary, then 29 C.F.R. §2509.75.2 does not apply.

C. No Abusive Situation Exists in This Case.

The purpose and goal of Taxpayer for the investment into CST of $319,500 was not to pay itself a small amount of wages and rent, but to make a profit for the benefit of his IRA. (P.A. 77-78) As conceded by the Commissioner in the Tax Court briefing, Taxpayer rolled over his entire retirement plan of approximately $319,500 into his IRA with the purpose of investing all of these funds into CST in two investment tranches as part of one plan of investment. (P.A. 521-522) Of this $319,500, the only amounts paid Taxpayer are as follows:

|  | Salary | Rent |
|---|---|---|
| 2005: | $9,754 | $0 |
| 2006: | $29,262 | $21,800 |
| 2007: | $0 | $12,410 |
| 2008: | $1,117 | $0 |

9

$40,133          $34,210

(P.A.78)

Clearly, the amounts paid by to Taxpayer over the ***four years*** following the investment into CST ***are insignificant compared to the amount of the investment***. It is hard to argue that the ***purpose*** of the rollover to the IRA and subsequent investment into CST was to pay these small amounts to Taxpayer. Regardless, whatever amounts were to be paid to Taxpayer were taxable ordinary income. What would the benefit be to orchestrate such a plan, other than to save the 10% early withdrawal penalty? Rather, the purposes of the transactions were to invest in a car dealership with the hope that it would generate profits to later be distributed to the IRA, and create value for the IRA.

D. No Prearranged Plan Exists

***The record is void of any evidence that suggests that a prearranged plan existed at all, whether an abusive plan or not.*** (*Record* Generally.) No trial occurred in which evidence could be admitted. The case was submitted under Rule 122, purely considering matters of law in the case based solely upon those facts stipulated by the parties. The Tax Court did not find as fact that there was a prearranged plan. Rather, it merely wrongfully presumed that such fact existed, even though it was not stipulated, nor supported by the evidence. (P.A. 3-28)

Appellate Case: 14-1310     Page: 13     Date Filed: 07/22/2014 Entry ID: 4177726

Regardless, the prearranged plan alone is insufficient to invoke the exception of 29 C.F.R. §2509.75.2. As noted above an abusive intent and control of the IRA to authorize the transaction by itself must be present. These issues were not addressed by the Tax Court.

The facts of the case do not indicate that the purpose of the IRA / Subsidiary structure was for Taxpayer to obtain wages and rent from the IRA without triggering the prohibited transaction rules. In fact, no rent was paid during the first year of the structure, and less than $10,000 in wages were paid. This does not appear to be a plan to get money paid out to Taxpayer. The Commissioner simply presumes that (a) there was a prearranged plan, and that (b) it was an abusive plan in that its purpose was to allow Taxpayer to get payments from the IRA without triggering the prohibited transaction rules. (C.B. 39)

Even if a plan was prearranged and *designed* for the purpose of getting payments to Taxpayer without triggering the prohibited transactions, 29 C.F.R. §2509.75.2 also requires the IRA to have the authority to cause such payments to be made *by itself*. As noted above, any compensation paid to Taxpayer required the approval of a third unrelated person. (P.A. 123) The IRA by itself could not authorize such payment, nor could the IRA working in concert with Taxpayer as Manager authorize such payment. *Id*.

11

E.  Direct v Indirect Transfers

The Commissioner argues that the language of 29 C.F.R. §2509.75.2 providing that "direct or indirect transfers...." should cause the payments through a subsidiary to be a prohibited transaction. (C.B. 42-44)  First, this logic would make the Plan Asset Regulation 100% irrelevant as it only applies to transfers that occur through a subsidiary entity.  Second, this language is intended to apply to payments to third parties and entities owned by the Fiduciary whereby after the third party receives the payment it transfers it to the Fiduciary.  *Id*. For example, an IRA pays XYZ, LLC which is owned by the fiduciary.  After the payment, XYZ, LLC pays the funds to Fiduciary.  This is an indirect payment outside of the IRA / Subsidiary context at issue in this case.  The cases cited by Commissioner referring to "indirect transfers" all relate to this context, rather than the IRA / Subsidiary context. (C.B. 44)

Regardless, the "direct or indirect" language in 29 C.F.R. §2509.75.2 referred to by Commissioner says "direct or indirect transfers… of *assets of the plan.*"  Again, under the Plan Asset Regulation the assets of CST are not asset of the plan.  Thus, this language is inapplicable.

F.  Swanson and Hellweg Cases

12

In both Swanson and Hellweg, taxpayers formed IRAs about the same time as the subsidiary entities that were owned by such IRAs. *Swanson v. Commissioner*, 106 T.C. 76, 93 (1996); *Hellweg v. Commissioner*, T.C., Memo. 2011-58 (2001.) At the direction of the taxpayers, the IRAs invested into the stock of the subsidiary entities. *Id*. In both cases, the subsidiary entities were domestic international sales corporations ("DISC") whose purposes of the internal revenue code is to receive commissions related to international sales. *Id*. In each case, the taxpayers owned independent companies outside of their IRA structure that conducted international sales. *Id*. These companies paid their IRA-owned DISC subsidiary commissions. *Id*. The commissions were then distributed as dividends to the IRAs. *Id*.

The Commissioner argues Swanson and Hellweg are not relevant in this case because the primary issue in those cases was whether the investment into the IRA subsidiary entity itself was a prohibited transaction, or whether the subsequent dividends paid by it to the IRA was a prohibited transaction. (C.B. 45-48) In the case at hand the Tax Court found the same result as both tranches of investment into CST were considered pursuant to the same plan of investment. (P.A. 521-522) While Taxpayer concedes that the primary issues in Swanson and Hellweg were different than in the case at hand, the facts relevant in this case were also present in Swanson and Hellweg. Just because the transactions between the fiduciary and the

13

DISCs in <u>Swanson</u> and <u>Hellweg</u> were not argued as the primary issues in those cases, doesn't mean that the Tax Court didn't acquiesce in such transactions as not being prohibited transactions. The Court had the power to find them to be prohibited transactions in those cases regardless of whether that issue was raised by Commissioner in those cases. It elected not to do so because they are not prohibited transactions.

Commissioner in this case argues <u>Swanson</u> and <u>Hellweg</u> are not applicable because the Commissioner in those cases did not present evidence in those cases that the transactions with the DISCs were prearranged. (C.B. 45-46) The problem with that argument is that there is no evidence on the record in this case either that the transactions were prearranged. Further, in considering the general facts of those two cases and this case, regardless of whether such facts are supported with evidence on the record, the facts in those cases clearly show a prearranged plan, while the facts in this case do not.

In <u>Swanson</u> and <u>Hellweg</u>, the transactions between the subsidiary entity and the fiduciary occurred on a regular and routine basis. (Swanson v Commissioner, 106 TC 76, 78; Hellweg v Commissioner, 2011-58 TC 2011, 4) In fact, the only business of the subsidiary entity were these transactions with the fiduciary. (Hellweg v Commissioner, 2011-58 TC 2011, 6) These transactions were the only business purpose of the subsidiary entity. *Swanson v. Commissioner*, 106 T.C. 76,

14

93 (1996); *Hellweg v. Commissioner*, T.C., Memo. 2011-58 (2001.) Clearly, the sole purposes of the DISCs were to receive commissions from the manufacturing companies owned directly by the fiduciaries. *Id.* Clearly, the structure was set up with a prearranged plan for these transactions to occur. The exact arguments being made by the Commissioner as to the facts that result in a prohibited transaction were present in both Swanson and Hellweg. *Id.* Yet the Courts in these cases failed to invoke the exception to the Plan Asset Regulation that the Commissioner argues can be found in 29 C.F.R. §2509.75.2. *Id.*

## III.    Exemptions Under Section 4975(d)(2) and (10)

Commissioner provides three reasons for why these exemptions contained in Section 4975(d)(2) and (10) are inapplicable. (C.B. 48-49) First, it argues that the plain text of the exemption provides they apply to compensation paid for services provided to the "plan" and CST is not the plan. (C.B. 48) This is a 100% turnaround from the argument made by Commissioner above related to whether CST should be disregarded as a separate from the IRA as set forth by the Tax Court. If CST is to be disregarded as a separate entity from the IRA because its prearranged purpose was merely to serve as a delivery of benefits to taxpayer from the IRA, then it cannot argue the opposite for purposes of the exemptions only being applicable to a "plan."

15

The second reason provided by Commissioner as to why the exemptions do not apply is that the exemptions require the payments to be "reasonable." (C.B. 50-52) However, Commissioner's arguments with respect to reasonableness are illogical. The intent of the statute clearly is that the amount of the payment be a "reasonable" amount, and that the service rendered to be a reasonably necessary service. Commissioner argues that it is unreasonable because (a) the services are not provided to manage the plan (which is the same as Commissioner's first argument,) and (b) the services were part of a prearranged plan. Neither of these arguments are new arguments, nor are the relevant to whether the payments were "reasonable." *Id.*

The third reason given by Commissioner for why the exemptions are inapplicable is that they do not apply to prohibited transactions set forth in Section 4975(c)(1)(E). Section 4975(c)(1)(E) is the listed prohibited transaction precluding a fiduciary dealing with the plan assets in a manner that only benefits himself. (C.B. 49) As argued above, plan assets were not involved as the assets of CST were not plan assets. This point is conceded by the Commissioner. Further, the payment of reasonable wages and rent is not a violation of this provision because Taxpayer is not dealing with the plan assets in a manner to only benefit himself. They were required to be approved by a third unrelated party. He is not

Appellate Case: 14-1310     Page: 19     Date Filed: 07/22/2014 Entry ID: 4177726

using these assets as if they were his own account. Rather, CST received a fair

service and facilities in exchange for this payment.

## IV.  Conclusion

For the foregoing reasons, the decision of the Tax Court should be reversed.

Respectfully submitted,

**RENKEMEYER LAW FIRM, LP**

_____/s/ Troy Renkemeyer_____
Troy D. Renkemeyer, CPA, LLM
Tax Court No. RT0231
10975 Benson Dr., Ste., 570
Overland Park, KS 66210
(913) 906-9800
(913) 906-9840 (fax)
trenkemeyer@rcwlawfirm.com

*Counsel for Appellants*

17

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure, I hereby certify that the textual portion of the foregoing brief (exclusive of the disclosure statement, tables of contents and authorities, certificates of service and compliance, but including footnotes) contains 3705 words as determined by the word counting feature of Microsoft Word 2008.

Pursuant to Circuit Rule 28A(h), I also hereby certify that electronic files of this Brief and accompanying Addendum have been submitted to the Clerk via the Court's CM/ECF system. The files have been scanned for viruses and are virus-free.

Respectfully submitted,

/s/ Troy D. Renkemeyer

Appellate Case: 14-1310    Page: 21    Date Filed: 07/22/2014 Entry ID: 4177726